EX PARTE LUM WILSON BOEHME.

No. 26,199. December 10, 1952.
State's and Relator's Motions for Rehearing Denied
February 25, 1953.

*D. M. Teague* and *Frank Ivey*, Dallas, for relator.

*Henry Wade,* Criminal District Attorney, *Gene Bailey,* First Assistant District Attorney, *J. J. Fagan* and *Julien C. Hyer,* Assistants District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Relator was indicted for a criminal offense, and prior to a trial in Criminal District Court No. 2 of Dallas County, he pleaded insanity as a bar to prosecution. The jury found him insane at the time of the commission of the offense as well as at the time for the trial. He was committed to the custody of the sheriff in accordance with the provisions of Article 932a, Vernon's Ann. C.C.P. The county judge acted under the provisions of said article and committed relator, first to the U. S. Veterans Hospital and, thereafter, to the State Hospital at Terrell, Texas.

This application is brought for the purpose of securing his

release. It is alleged that he has been restored to his sanity and that the superintendent of the State Hospital has stated in writing that he is now of sound mind and knows the difference between right and wrong, that he realizes the consequences of his acts. The matter has been presented to the Judge of Criminal District Court No. 2 of Dallas County, where the case was tried, but the judge refused to act on the application for his release, expressing a doubt as to the sufficiency of the notice given to him and also as to his jurisdiction to enter the order requested. Application was then filed in this court.

The question is whether or not the county court which issued the order of commitment, sending him to the State Hospital, or the court where the issue of insanity was determined, has jurisdiction to hear the application. This question is a difficult one and the decisions of our court have not been fully in accord on the subject.

Prior to the enactment of Chapter 466, Laws of the 45th Legislature, 1937, beginning at page 1172, we had a similar though somewhat different procedure by which a party charged with crime may plead and have adjudicated the question of his sanity at the time of the commission of an alleged offense, and also at the time of trial. Under such former procedure one who had been found of unsound mind at the time of the commission of an offense was ordered released and there was no provision for holding him until he could be committed to a state hospital for the insane. The procedure generally followed was that a complaint was filed in the county court, in accordance with the provisions of the civil statute regulating the trial of lunatics, a jury was impaneled, the evidence heard, and they determined again the question of his sanity. If found to be insane, it became the duty of the county judge to commit him to a state hospital in accordance with detailed provisions of the law at that time.

The Act of the 45th Legislature had as its expressed purpose to provide "for the commitment of such persons to a State hospital for the insane * * *," without the necessity of the services of another jury in another trial on the identical issues in a county court. This we understand from the caption and the purpose clause of said act to be the chief purpose. In the event a person charged with crime shall have been tried on the issue and found insane at the time of the commission of the offense and at the time of the trial the procedure shall be as follows:

"* * * the Court shall thereupon make and have entered on the minutes of the Court an order committing the defendant to the custody of the sheriff, to be kept subject to the further order of the County Judge of the county, and the proceedings shall forthwith be certified to the County Judge who shall at once take the necessary steps to have the defendant committed to and confined in a State Hospital for the insane until he becomes sane." (Article 932a, Sec. 1, part of sub-sec. b.)

It is our conclusion that the district court does not commit the individual to a hospital, he simply orders the sheriff to hold the party to await the procedure by the county judge. In order to expedite such procedure the statute then directs that a certified copy of the proceedings in the trial court shall be sent to the county judge. The trial judge makes no order directing the county judge as to what he shall do, but the act itself, as a matter of law, is the authority for the action taken by the county judge in committing the individual to a hospital for the insane. It may be that provisions of the civil statute regulating the commitment and admission to such hospital have yet to be complied with. There is nothing in this article to amend or repeal such requirements. Presumably all of this was done by the county judge committing relator to the State Hospital in which he is now confined.

Section 3 of the foregoing Article 932a reads as follows:

"When the defendant so committed to a hospital for the insane becomes sane, the superintendent of the hospital shall give written notice of that fact to the Judge of the Court from which the order of commitment issued. Upon receipt of such notice the Judge shall require the sheriff to bring the defendant from the hospital and place him in the proper custody until the hearing may be had before a jury in such Court to determine defendant's sanity, and if he be found sane, he shall be discharged, unless he had been previously found to be sane at the time at which he is alleged to have committed the offense charged, in which event, unless previously acquitted, he shall be tried for the offense charged."

It will be noted that in case of recovery of sanity notice shall be given "to the Judge of the Court from which the order of commitment issued." This is further made evident by the fact that the county court has machinery for the retrial, or for the trial, of a party seeking his discharge from a hospital for the insane. No machinery is provided for Criminal District Court

No. 2 of Dallas County to draw a jury and try relator, in the present state of the record.

Attention is called to the fact that when a defendant so committed becomes sane it is the duty of the superintendent of the hospital confining him to give written notice of that fact to the judge who committed him. This, however, is left to his discretion and judgment as to the mental condition of the party, and mandamus will not lie to force the performance of an act within the discretion of the superintendent. The judge who receives the notice will pass upon its sufficiency.

Admittedly, some of the holdings of this court are in apparent conflict with this opinion. In so far as they are they are here specifically overruled.

Relator is lawfully restrained by the hospital authorities and must be so restrained until released under proper procedure by the county court of Dallas County. This court has no jurisdiction to make any order in the matter.

MORRISON, Judge [concurring].

I agree that this court is without jurisdiction to make any order in this proceeding, but I cannot bring myself to agree with the opinion of my brethren wherein they hold that the tribunal referred to in Section 3 of Article 932a is the county court of the county where prosecution was originally instituted. As I see the matter, the criminal district court of Dallas acquired jurisdiction of the relator when prosecution was instituted therein and must retain jurisdiction to the exclusion of all other courts. The opinion of my brethren empowers a county court to set aside a judgment of a district court, as I view it, and I cannot subscribe to such a rule.

I feel that this question has heretofore been adjudicated by this court in Wright v. State, 140 Tex. Cr. R. 193, 143 S. W. 2d 949, and Ex parte Frailey, 146 Tex. Cr. R. 557, 177 S. W. 2d 72, and that the holdings therein are contrary to the conclusion herein reached, and that such decisions are sound and should be followed.

### ON MOTIONS FOR REHEARING.

WOODLEY, Judge.

The state has filed motion for rehearing complaining of the

holding in our original opinion to the effect that the county court is the proper tribunal for the trial of the issue of restoration of sanity, should the superintendent give notice in writing that appellant has become sane. The state agrees that relator's prayers for release should be denied.

Appellant answers by motion for rehearing urging that he is entitled to trial on the issue upon the writing signed by the superintendent, in such court as we may determine to be the committing court referred to in Art. 932a, Sec. 3, V.A.C.C.P.

A rather full discussion of the law pertaining to the issue of insanity under our Code of Criminal Procedure and Penal Code may be helpful.

Article 34 P.C. provides for insanity as a defense to crime: "No act done in a state of insanity can be punished as an offense."; it provides also for insanity as a bar to prosecution: "No person who becomes insane after he committed an offense shall be tried for the same while in such condition." And the article provides for insanity as a bar to punishment for crime: "No person who becomes insane after he is found guilty shall be punished while in such condition."

The procedure for the trial of the issue of insanity after conviction (insanity as a bar to punishment), the commitment of the convicted person found insane, and the procedure to be followed when he becomes sane, are found in Arts. 921 to 932, inclusive, of the Code of Criminal Procedure.

These statutes are not applicable here as relator has not been tried or convicted. It is to be observed, however, that the procedure for committing the insane convicted defendant to the hospital is identical with that found in Art. 932a V.A.C.C.P., providing for the commitment of an accused found insane at the time of the preliminary trial of that issue or at the time of the trial proper, other than in the particulars hereafter denoted.

Art. 926 C.C.P., under the heading "To commit insane defendant" provides that the court shall make and have entered in the minutes an order committing the defendant to the custody of the sheriff, to be kept subject to the further order of the county judge of the county.

This identical provision is found in Art. 932a both in Sec.

1(b) relating to persons found insane at the time of a preliminary trial on that issue, whether found sane or insane at the time of the act charged, and in Sec. 2(b) relating to an accused found insane at the time of the trial proper and either sane or insane at the time of the alleged crime.

The fact that this order appears under the heading *"To commit insane defendant"* should be persuasive that the legislature considered the order in the same language mentioned in Art. 932a V.A.C.C.P. as the order of commitment.

Art. 927 C.C.F. under the heading "Confined in asylum," provides that when a defendant "has been committed" under Art. 926 C.C.P. the proceedings shall forthwith be certified to the county judge, who shall at once take the necessary steps to have the defendant confined in the lunatic asylum until he become sane.

The corresponding provision of Art. 932a V.A.C.C.P. is that the county judge shall take the necessary steps to have the defendant *"committed to* and confined in a State hospital for the insane until he becomes sane."

The term "committed to" has thus been added to the description of the action to be taken by the county judge in having the defendant confined in an institution for the insane, now known as a state hospital rather than "the lunatic asylum."

Here again, if the act required of the county judge under Art. 927 C.C.P. is not a commitment such as referred to in Sec. 3 of Art. 932a V.A.C.C.P., it is difficult to see how it became such a "commitment" by the addition of the word in Secs. 1 and 2 of Art. 932a. The act to be performed by the county judge appears to be ministerial or administrative and not a judicial act, and is the same duty to be performed whether he acts under Art. 927 or 932a C.C.P.

Prior to the enactment of Art. 932a V.A.C.C.P., insanity was available as a defense to crime only where the issue was raised on the trial of the issue of guilt or innocence. Insanity at the time of the trial was then the sole issue to be decided where the accused pleaded such insanity as a bar to prosecution and requested such preliminary trial.

The only effect of a finding of insanity in such preliminary

trial (insanity as a bar to prosecution) was to abate further proceedings until such time as the accused might regain his sanity.

In enacting Art. 932a C.C.P. it seems to have been the purpose of the legislature to avoid the necessity of further judicial determination of insanity, when a jury had found an accused insane at the time of the trial, in order to commit such person to a state hospital for the insane. The emergency clause reads, in part: ". . . and the further fact that there are no laws authorizing the commitment to State institutions for the insane charged with crime found upon a trial to be either insane at the time of the commission of the offense or at the time of the trial of such person, . . ."

In providing for such commitment the legislature thought it advisable, in the case of the preliminary trial on the issue of present insanity as a bar to prosecution, to have the jury also determine the question of whether the accused was sane at the time of the act charged. This finding would then determine whether the accused, in the event he was found sane either at the time of such trial or at some future trial upon his restoration to sanity, should be tried for the offense charged against him or be discharged.

Also prior to the enactment of Art. 932a V.A.C.C.P. an acquittal on the ground of insanity was a complete and absolute acquittal and entitled the accused to prompt release, the same as any other verdict of not guilty.

The effect of Art. 932a V.A.C.C.P. was to require an additional finding by the jury on the issue of sanity or insanity at the time of such trial, and since its enactment, only upon an acquittal on the ground of insanity at the time of the act coupled with an additional finding by the jury that the defendant is sane at the time of the trial is he entitled to be discharged. If found insane at the time of the trial he is to be confined in the state hospital until he becomes sane.

Art. 932a V.A.C.C.P., Sec. 3, provides for a hearing on the issue of sanity or insanity when a defendant "so committed" under the provisions of Secs. 1 or 2 of said Art. 932a becomes sane and the superintendent of the state hospital gives written notice of that fact "to the judge of the court from which the order of commitment issued."

Because of the use of the term "committed to" in Sections 1 and 2, in connection with the duty to be performed by the county judge, it is suggested that the reference in Sec. 3 of Art. 932a should be interpreted to mean the county court rather than the court where the issue was tried and the order entered committing the defendant to the custody of the sheriff, to be kept subject to the order of the county judge. A majority of this court agreed with this interpretation on original submission.

Further, it is suggested that where, upon the trial of the sanity issue alone, the accused has been found insane at the time of the act charged, or where the accused has been found not guilty by reason of insanity at the time of the commission of the act, a criminal charge is no longer pending against him, and the county court alone has jurisdiction to try the issue of the restoration of sanity.

To agree with such interpretation would be to say that, though the language of the statute is identical, the court referred to as the committing court would differ, depending upon whether the prosecution might proceed or had become barred by the verdict of insanity.

In other words, assuming the criminal case to be pending in the district court, this contention would result in the conclusion: (1) that where the defendant was tried on the issue of sanity alone and found insane at the time of the act charged, as well as at the time of the preliminary trial, the county court should hear the question of restoration of sanity; (2) but if on such preliminary trial he was found sane at the time of the act, but insane at the time of the preliminary trial, the district court should determine the question as to the restoration of sanity; (3) if the plea of insanity was raised on the main trial and the defendant was found insane at the time of the act and insane at the time of the trial, the county court should determine whether he had become sane; (4) but if on such main trial he was found sane at the time of the act charged and insane at the time of trial, the district court is the committing court and is to pass upon whether or not the defendant has regained his sanity.

On the other hand, to hold that the court referred to in Sec. 3 of Article 932a V.A.C.C.P. as the "court from which the order of commitment issued" is the court wherein the accused was found insane results in complete harmony among the provisions

of all of the statutes dealing with insanity in connection with criminal cases, and the prior holdings of this court on the subject.

The statute is clear as to the want of authority of the county court to try one charged with a criminal offense under a complaint of lunacy. This is true both in the filing of the complaint and in the proceeding for restoration of sanity. Art. 5561a requires that there be "no criminal charge pending against such person."

A recognition of the fact that the judicial act of commitment is performed by the court which tried the issue of insanity, and that the county judge acts merely in a ministerial or administrative capacity and not as a court, in attending to the details of the admission and confinement of the accused found insane in one of the state hospitals, manifests the correctness of the latter interpretation of the term "court from which the order of commitment issued."

The question as to where the trial on the issue of restoration of sanity should be held appears to have been decided by this court in Ex parte Frailey and in Wright v. State, cited by Judge Morrison in his concurring opinion.

In Wright v. State, 140 Tex. Cr. R. 193, 143 S.W. 2d, it was contended that the district court was without jurisdiction to pass upon the restoration of sanity because the county court was the proper tribunal for such trial under Art. 932a.

This contention was properly overruled. Wright had been found sane at the time of the killing, and the court was dealing with a case arising under Sec. 1(b) of Art. 932a. As above stated, the language of this subsection relating to the commitment of the accused found to be insane applies alike to cases where the jury has found the accused to have been insane at the time of the act.

In Ex parte Frailey, 146 Tex. Cr. R. 557, 177 S.W. 2d 72, Mrs. Frailey had been found insane at the time of the killing for which she was indicted on the charge of murder, and insane at the time of the trial. After her commitment, as provided in Art. 932a, she was found to be sane by a jury impaneled in the county court of the county where the state hospital to which she was committed was located, and she was released.

Upon order of the judge of the district court where she had been declared insane, Mrs. Frailey was arrested and held for trial before that court. She sought release on the ground that the district court was without jurisdiction, and the judge thereof was without authority to order her arrest, she having been found insane at the time of the killing and having been committed to the state hospital, she contended, by the county judge and not by the district court.

The contention was overruled and in the opinion, after quoting excerpts from Art. 5561a V.C.S., we said:

"It is worthy of note that in each of the above quotations we find the recurring phrase 'a person not charged with a criminal offense,' and from its iteration we conclude that such provisions of the statute refer to an ordinary trial of insanity, and do not apply to trials of insanity when offered as a defense for a criminal act. *We further think that the phrase 'not charged with a criminal offense,' as used in this article refers to the status of the person at the time of the insanity trial, and such status would not be affected by dismissal of pending indictments after such lunacy trial* . . .

". . . Evidently the Legislature, finding the need for a statute of like import, in 1937 passed what we now find to be Art. 932a, C.C.P. Vernon's Criminal Statutes, and thus restored the law as it had existed since 1858, with the exception of the interim between 1925 to 1937, and *again leaving the trial of a restoration to sanity of a person 'charged with a criminal offense' to the court which had declared such person to be of unsound mind.*

"It therefore follows that the county court of Kaufman County was without jurisdiction to try the question of relator's sanity, and its judgment relative thereto is void and of no effect, and relator therefore should be confined in the State hospital, still possessed, however, of her right to have the question of her sanity determined by the Dallas Court." (Not Dallas County Court as suggested in Vernon's notes of decisions under Art. 932a VACCP.)

It is further observed that the interpretation of the statute was given in the Wright and Frailey cases, supra, in the years 1940 and 1944 respectively, following the enactment of Art. 932a V.A.C.C.P. in the year 1937.

We judicially know that the legislature of this state has met and adjourned several times since the above decisions of

this court were handed down and that body has not seen fit to change or amend the statute so interpreted.

As we construe Art. 932a V.A.C.C.P., one found insane at the time of trial is entitled to a trial on the issue of whether or not he has become sane when the superintendent of the hospital to which such person has been committed gives written notice as provided in Art. 932a V.A.C.C.P. that he has become sane, such trial to be had in the court in which he was adjudged to be insane. Ex parte Frailey, 146 Tex. Cr. R. 557, 177 S.W. 2d 72; Wright v. State, 140 Tex. Cr. R. 193, 143 S.W. 2d 949, supra.

We do not construe the statute to apply alone to the individual named as superintendent but to the physician in charge of the hospital. Nor do we construe the statute to mean that the superintendent has discretion in the matter other than a determination of the fact that his patient has or has not been restored to sanity. His duty extends no further than to give the written notice when the patient, in his opinion, has become sane.

So construing the same, Art. 932a V.A.C.C.P. is constitutional and provides the exclusive method by which it may be judicially determined that relator has recovered his sanity and is entitled to discharge.

In this connection we observe that the hospital authorities are not authorized to release a patient found insane and committed under the provisions of the Code of Criminal Procedure, temporarily or otherwise. See Art. 3193i, Vernon's Ann. C.S. which reads in part:

". . . but no patient, who has been charged with or convicted of some offense and been adjudged insane in accordance with the provisions of the code of criminal procedure, shall be permitted to temporarily leave such institution under any circumstances."

Relator is lawfully restrained by the hospital authorities and must be so restrained until released to Criminal District Court No. 2 of Dallas County for trial of the issue as to whether or not he has become sane.

If the judge of the district court in question determines that the notice from the superintendent or other official of the state hospital is sufficient, and he orders trial on the issue of relator's

sanity at the present time, we have no doubt of the binding effect of the verdict therein rendered. We are not inclined to instruct the trial judge as to the sufficiency of the writing shown in this record, nor do we feel that we have the authority to do so.

Remaining convinced that relator's application for mandamus and for habeas corpus was properly denied, we now withdraw that part of our original opinion which is contrary to this opinion on rehearing and re-affirm our holding in Ex parte Frailey and in Wright v. State, supra.

The motions for rehearing by the state and by the relator are overruled.

GRAVES, Presiding Judge [dissenting].

My brethren and I are at variance only upon one proposition, and that is as to what court the relator should be tried in relative to the recovery of his sanity in this matter.

It is shown that at one time he was charged with a criminal offense upon an indictment in one of the district courts of Dallas County. He filed an affidavit of lunacy at the time. On the call of said case in said court he was tried before a jury of twelve men and found to have been insane at the time of the commission of the offense, as well as insane at the time of this trial.

It is my contention that he having been found insane at the time of the commission of the offense, he can never be tried therefor again, regardless of his present sanity or insanity.

Now, the difference between my brethren and me is, where the relator should be tried relative to the recovery of his sanity.

At the present time the relator is confined in the State Insane Hospital at Terrell by virtue of the fact of his having been found insane at the time he was called for trial in the criminal district court of Dallas County, and he now claims to have recovered his sanity.

The statute in question requires that the trial of one who has recovered his sanity shall be had in the court *which committed him* to the insane hospital.

It is my contention that the district court has no power to commit any person to confinement in a hospital for the insane.

It is evident by the judgment of the district court that found the relator insane that such court was required by law to commit him to the sheriff of the county to be by him turned over to the county court or probate court, which court should thereupon commit him to the insane hospital for treatment.

It is recognized by the statute, and it is also recognized by the district court in this instance, that it had no power to commit the relator to the hospital for the insane; that such power rested in the county court, and it became the duty of the county court to thus commit the relator to the insane hospital.

Section 2a of Chapter 466, Acts of the 45th Legislature, Regular Section (1937) page 1172, (now article 932a of Vernon's Ann. Code of Criminal Procedure) provides that when the jury shall have found the defendant "to have been insane at the time the act is alleged to have been committed and insane at the time of trial * * * the Court shall thereupon make and have entered on the minutes of the Court an *order committing the defendant to the custody of the sheriff, to be kept subject to the further order of the County Judge* of the county and the proceedings shall forthwith be certified to the *County Judge* who shall at once take the necessary steps to have the defendant committed to and confined in a State hospital for the insane until he becomes sane." (Italics mine.)

Section 3 of the Act or Article reads as follows:

"When the defendant so committed to a hospital for the insane becomes sane, the superintendent of the hospital shall give written notice of that fact to the *Judge of the Court from which the order of commitment issued.* Upon receipt of such notice the Judge shall require the sheriff to bring the defendant from the hospital and place him in the proper custody until the hearing may be had before a jury in such Court to determine defendant's sanity, and if he be found sane, he shall be discharged, unless he had been previously found to be sane at the time at which he is alleged to have committed the offense charged, in which event, unless previously acquitted, he shall be tried for the offense charged."

One is led to believe that the commitment to the insane hospital must come from the county court and that court is the court that committed him to the insane hospital, and that is the court from which the order of commitment issued. If so, it is very plain that the relator's trial for sanity should be be-

fore the court in Dallas County which issued the order of commitment to the insane hospital.

That is the only difference between my brethren and myself, they claiming that it should have been the court that committed the relator to the custody of the sheriff to be taken to the county court, and my contention being that his trial for sanity should be before the county court of Dallas County.

It is worthy of consideration to show also that the relator can never be tried for the offense originally charged against him because he had been found to be insane at such time and we cannot upset that judgment, nor can we contest the same since it took place quite an interval of time prior to the present instance; and as regards the original offense charged in the Dallas district court, he has been found to have been insane at the time of its commission.

The county court has jurisdiction of lunacy cases conferred by Article V, Section 16 of our State Constitution, as well as by Article 5550, et seq. of the Revised Civil Statutes of 1925; and nowhere is it said therein that the district court should have such concurrent jurisdiction therein save as a defense for a crime. The crime herein has passed out of the case because of the finding of insanity at the time of the commission of the offense, and surely relator can never be convicted for the original offense therein charged.

I, therefore, dissent from that portion of the opinion herein that directs the relator to be tried in the district court of Dallas County.